# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BEVERLY HAYNES, | Case No.: 2:10-cv-02176-RLH-RJJ |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#26) |
| STATE OF NEVADA; NEVADA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF MENTAL HEALTH AND DEVELOPMENTAL SERVICES; SUSAN YATES, an individual; STACY WHITE, an individual, | |
| Defendants. | |

Before the Court is Defendants State of Nevada, Nevada Department of Health and Human Services, Division of Mental Health and Developmental Services ("MHDS"), Susan Yates-Chambers (incompletely named Susan Yates in the complaint), and Stacey White's (improperly spelled Stacy White in the Complaint) **Motion for Summary Judgment** (#26, filed Oct. 7, 2011). The Court has also considered Plaintiff Beverly Haynes' Opposition (#33, filed Nov. 14), and Defendants' Reply (#36, filed Dec. 1).

/

/

1

AO 72
(Rev. 8/82)

**BACKGROUND**

This dispute arises out of Haynes' allegations that she was fired from the MHDS because of her race and national origin. Haynes is an African American female from Jamaica with a Jamaican accent. Haynes began working part-time for MHDS at the Desert Regional Center ("DRC") in February 2007. She later became a full-time employee in June 2008. Susan Yates-Chambers is a Caucasian female who began working at the DRC in March 1998, and became the Director of Nursing ("DON") in September 2006. Yates-Chambers is responsible for the supervision of all nurses at the DRC, including the Assistant Director of Nursing ("ADON"). Stacey White is an African American female who became Acting ADON in January 2008, and ADON about the same time that Haynes became a full-time employee. Haynes alleges that from January 2008 until she was fired, she was subjected to continuous negative comments regarding her work performance and either false or exaggerated allegations regarding medication transcription errors. Haynes claims this was because White and Yates-Chambers were discriminating against her based on her race and Jamaican heritage.

Haynes was fired from the MHDS in September 2009 after receiving a Specificity of Charges recommending her dismissal for medication and transcription errors and for not properly examining a client who had hit her head on a brick wall and after a pre-disciplinary hearing to address the charges. After she was fired, Haynes contested her discharge with Nevada State Personnel Commission, filed a complaint with the State of Nevada Department of Personnel's Harrasment/Discrimination Hotline, and received a notice of Complaint/Investigation from the Nevada State Board of Nursing (the "State Board"). Haynes filed a charge of discrimination with the Nevada Equal Rights Commission on October 29, and received a right to sue letter on September 23, 2010. Haynes then filed suit on December 15, 2010. Her current complaint alleges: (1) wrongful termination under § 1983 (2) harassment, (3) discrimination based on race and national origin, (4) fraud and misrepresentation, and (5) defamation. Now before the

/

Court is Defendants' motion for summary judgment. For the reasons discussed below, the Court grants the motion.

**DISCUSSION**

**I.     Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

1  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the
2  moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to
3  "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.
4  The nonmoving party "may not rely on denials in the pleadings but must produce specific
5  evidence, through affidavits or admissible discovery material, to show that the dispute exists,"
6  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply
7  show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285
8  F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of
9  evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

10 **II.    Analysis**

11         The Court will first discuss a few evidentiary issues before addressing the substance
12 of the motion.  Haynes submitted a personal affidavit in response to Defendants motion.  (Dkt.
13 #33, Ex. 1.)  This affidavit included various documents purporting to substantiate Haynes'
14 affidavit.  Defendants object to the Court's use of three of these exhibits.  Specifically, Defendants
15 object to: Ex. 1-I, a document from a patient's medical record which appears to be a telephone
16 medication order; and Exs. 1-J and 1-K, both of which are letters from Haynes' prior counsel to
17 Cynthia J. Peterson, an investigator for the Nevada State Board of Nursing.  The Court agrees that
18 these documents are unauthenticated and the letters are hearsay.  Thus, none of these exhibits will
19 be used to support Haynes' response to the motion.  The Court will address Defendants' other
20 evidentiary objection in its analysis.

21         **A.    Wrongful Termination under § 1983**

22         Haynes first claim is wrongful termination under § 1983 against MHDS.  A
23 plaintiff can bring a § 1983 action against a local government entity if the plaintiff can show that
24 the entity had an established policy or custom that caused employees who implemented the policy
25 or custom to violate the constitutional rights of others.  *Monell v. Dep't of Soc. Servs. of City of*
26 *New York*, 436 U.S. 658, 690–92 (1978).  However, absent such a policy or custom, a local

1  government entity cannot be held liable solely because one of its employees commits an unlawful
2  wrong against another. *Id*. at 691.  Here, Haynes never alleges that there is a policy or practice of
3  race discrimination or national origin discrimination at MHDS.  Because Haynes has not alleged a
4  policy or practice of discrimination, or presented any evidence of a policy or practice, any § 1983
5  claim against MHDS necessarily fails.[1]  Therefore, the Court dismisses Haynes' wrongful
6  termination claim.

       **B.**      **Title VII Claims**

Under the *McDonnell Douglas*, 411 U.S. 792 (1973), burden-shifting framework in employment discrimination cases, plaintiffs must present a prima facie case to survive summary judgment.  *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) (discussing Title VII disparate treatment and retaliation claims).  If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action.  *Id.* at 640.  If the defendant articulates such a reason, the burden shifts back to the plaintiff to show that the employer's reason is merely a pretext for discrimination.  *Id.*  At all times, the ultimate burden of persuasion remains with the plaintiff.  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796–97 (9th Cir. 1982) (citing *Texas Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

       **1.**      **Harassment**

Haynes' next cause of action is entitled "harassment," which the Court interprets as a Title VII and Nevada statutory hostile work environment claim.  To succeed on a hostile work environment claim, Haynes must show that: (1) she was subjected to verbal or physical conduct of a harassing nature that was based on a protected characteristic; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment

---

[1] The Parties do not actually address the dispositive *Monell* issue.  Rather, the parties focused on whether a state administrative decision finding that Haynes was not wrongfully discharged should be given preclusive effect and require that the Court grant summary judgment on this claim.  As the Court dismisses for a separate reason, the Court will not address the Parties' arguments regarding collateral estoppel and *res judicata*.

5

and create an abusive work environment. *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002). "Generally, a plaintiff alleging racial or national origin harassment would present facts showing that he was subjected to racial epithets in the workplace." *Id.*  To be actionable, a hostile work environment must be both subjectively and objectively offensive. *Watson v. Las Vegas Valley Water Dist.*, 378 F. Supp. 2d 1269, 1275–76 (D. Nev. 2005) (citing *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000)). "In evaluating the objective hostility of a work environment, the factors to be considered include the 'frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (quoting *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 872 (9th Cir. 2001)). Title VII, which provides for discrimination, hostile work environment, and related retaliation claims, is not "'a general civility code for the American workplace'" and the Court will not treat it as such. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (quoting *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75 (1998)).

      Haynes' hostile work environment claim fails as a matter of law.  Rather than setting forth specific evidence showing a material question of fact, *Anderson*, 477 U.S. at 256, Haynes simply relies on her allegations that White made certain statements such as not liking Haynes' Jamaican accent.  Defendants, on the other hand, offer various affidavits from MDS employees that worked with Haynes stating that they have no recollection of any such comments or any discriminatory conduct. (Dkt. #26, Ex. H, Aff. of Theresa Schrantz; Ex. I, Aff. of Jackie Sirorine; Ex. J, Aff. of Katherine Grant.)  Haynes only offers her own affidavit to support her claims that White, and only White, made such statements on certain occasions.  Haynes cites and offers no evidence other than her unsubstantiated allegations to support this claim.  Without some evidence supporting Haynes' allegations that White subjected Haynes' to verbal or physical

/

AO 72
(Rev. 8/82)

1  harassment that was severe or pervasive, not merely Haynes' own allegations, the Court must grant
2  summary judgment on this claim.

### 2.     Race and National Origin Discrimination

"Under Title VII, an individual suffers disparate treatment when he or she is singled out and treated less favorably than others similarly situated on account of race" or national origin. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (internal quotations and citations omitted). To succeed on a disparate treatment/discrimination claim, a plaintiff must show that: (1) plaintiff belongs to a protected class (2) plaintiff was performing according to her employer's legitimate expectations; (3) plaintiff suffered an adverse employment action; and (4) other employees with similar qualifications were treated more favorably. *Vasquez*, 349 F.3d at 640 n.5 (9th Cir. 2003).

Here, it is undisputed that Haynes has met the first and third elements of her claim. However, Haynes fails to establish that she was performing according to her employer's legitimate expectations when she was fired. After Haynes was fired, she was referred to the Nevada State Board of Nursing ("State Board"). The State Board issued a formal complaint and set a hearing for May 20, 2010. (Dkt. #26, Ex. C., Aff. of Chirs Sansom.) On June 29, Haynes accepted, agreed to, and signed an Agreement for Reprimand. (*Id.*) In this Agreement for Reprimand, Haynes admits that between August 2008 and December 2008, she made several transcription and documentation errors, which violated NRS 632.320(7) and NAC 632.890(27). Further, in her evaluation from June 2009, Haynes received scores of 'does not meet standards' in two of the most highly weighted categories on the evaluation. (Dkt. #33, Ex. A, Employee Evaluation dated June, 2009.) Haynes does not provide a legitimate reason for why this evidence does not show that she was not meeting her employer's legitimate expectations. Nor does she provide any countervailing evidence showing that she was meeting expectations other than past employee evaluations, where

/
/

7

she generally was marked as 'meets standards.'[2]  Thus, Haynes has not presented sufficient evidence as to the second element of a *prima facie* employment discrimination case.  Because Haynes has not presented evidence sufficient to create a question of fact as to whether she was performing according to her employer's legitimate expectations, her claim fails as a matter of law.  Thus, Haynes fails to meet her burden of first establishing a *prima facie* case of discrimination and the Court need not address the next steps of the *McDonnell Douglas* burden-shifting framework.

**D.     Fraud and Misrepresentation**

Misrepresentation is a form of fraud where a false representation is relied upon in fact.  *See Pacific Maxon, Inc. v. Wilson*, 96 Nev. 867, 871 (Nev. 1980).  A claim for fraud (or fraudulent misrepresentation) requires a party to show each of the following elements: (1) a false representation; (2) knowledge or belief that the representation was false (or knowledge that the defendant had an insufficient basis for making the representation); (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance upon the misrepresentation; and (5) damage resulting  from such reliance.  *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1017 (Nev. 2004); *see also Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998).

Haynes has presented no evidence substantiating her allegations that Defendants White or Yates-Chambers altered or fabricated any documents relied upon by the Nevada Board of Nursing in disciplining Haynes or relied upon by Haynes in accepting her discipline from the Board.  At most, Haynes claims that one of the accusations, a Letter for Reprimand, submitted to the Board, but not relied on by the Board in sanctioning her, was actually the fault of another nurse.  Also, since Haynes claims to have known that this particular incident was the fault of another nurse and because this incident was not part of the State Board's Agreement for Reprimand, Haynes could not have relied on the allegedly fraudulent document in accepting the reprimand from the Board.  Since she could not have relied on what false information may have

---

[2] As discussed below, Haynes does allege that White and Yates-Chambers forged evidence against her and provided it to the State Board, but she provides no supporting evidence for this contention.

AO 72
(Rev. 8/82)

1  been presented to the board and she has not presented any evidence that the Defendants falsified or
2  knowingly submitted false information to the board, Haynes' fraud claim fails as a matter of law.

3  **E.  Defamation**

4  To properly plead defamation, a plaintiff must allege: "(1) a false and defamatory
5  statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a
6  third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."
7  *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005).  The Nevada Supreme Court has also stated that
8  "statements made in good faith furtherance of one's official duties are generally privileged."
9  *Jordan v. State ex rel. Its Dept. Of Motor Vehicles & Public Safety*, 110 P.3d 30, 48 n.56
10 (*abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670, 673 n.6
11 (Nev. 2008)).

12 Here, Haynes completely relies on allegations and conclusory statements in her
13 affidavit rather than presenting competent evidence of defamation.  Haynes claims that Yates-
14 Chambers submitted a Letter or Reprimand dated November 5, 2007, the same one discussed in
15 the fraud section above, to the State Board even though she knew that it was later determined that
16 the underlying incident giving rise to the Letter of Reprimand was the fault of another nurse.  To
17 support this allegation, Haynes simply provides a copy of the Letter of Reprimand.  However, the
18 Letter of Reprimand in and of itself does not actually support Haynes' allegations.  Rather, Haynes
19 would have to provide some evidence showing that the MHDS had determined or Yates-Chambers
20 knew that the Letter of Reprimand was wrongfully issued or based on incorrect facts.  Simply
21 presenting it and claiming that it is wrong is not evidence that it is false or defamatory.  As such,
22 Haynes has presented no evidence supporting her allegations and demonstrating a material
23 question of fact for a jury.  Thus, the Court grants summary judgment on this claim.
24 /
25 /
26 /

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#26) is GRANTED. The Clerk of the Court is directed to close this case.

Dated: February 23, 2012.

_____
ROGER L. HUNT
United States District Judge